This morning is Durham v. Kelley et al. 21-3187. Counsel. Thank you, Your Honor. How are you? Not too bad. How are you holding up? Whenever you're ready. Thank you. Good morning, and may it please the Court. Oren Nimney. You can reserve time for rebuttal. I did. If I could ask the Court to reserve four minutes for rebuttal. Thank you, Your Honor. Good morning, and may it please the Court. Oren Nimney, on behalf of Appellant Tremayne Durham. You probably ought to raise your voice just a tad. Of course. Oren Nimney, on behalf of Appellant Tremayne Durham. Mr. Durham pleaded quintessential ADA, Rehab Act, and Eighth Amendment claims when he pleaded that he was diagnosed with lumbar stenosis, a degenerative chronic condition that involves the narrowing of the spinal column, and that he needs a cane to ambulate safely and a shower chair to safely take a shower. He then pleaded that he requested these accommodations from defendants repeatedly, 13 times for his cane and two times for his shower chair. I'm pretty familiar with the facts. So just so I understand, you're pursuing the ADA and the Rehabilitation Act claims against the officers in their official capacities. Is that correct? That's correct. Those claims against officers in their official capacities and then the Eighth Amendment claim against officers in their individual capacities. And the 1983 claim for the Eighth Amendment. Exactly. Although I guess, to some extent, it's the Fourth Amendment, too. Is there a seizure? I don't believe that Mr. Durham pled a seizure. Okay. He pled it under a deliberate indifference standard. And then injunctive relief against the officers in both capacities, official and individual. Is that correct? I believe just in their, yes, that's correct, in their official capacities under the ADA and then in their, no, actually both in their official capacities under the ADA and under the Eighth Amendment, not in their individual capacities. Okay, got it. Okay. So at the end of the day, are you asking us to remand this? Yes, Your Honor. For permission to file an amended complaint? Is that what you're looking for here? No, we're not looking for permission to file an amended complaint. We believe on the face of Mr. Durham's complaint that he adequately pled all the elements of ADA and Rehab Act and Eighth Amendment claims. We would be asking for a remand with some instructions specific on both sovereign immunity and on the merits of his claims so that he can continue to go forward, because this case was dismissed at the 1915A screening order stage, so it hasn't even been served yet. So what relief are you seeking today? Today we're seeking reversal. The district court dismissed Mr. Durham's ADA, Rehab Act, and 1983 claims at the 1915A screening order stage, both on the merits of his ADA claims and his Eighth Amendment claims and also by holding that he didn't sue the proper defendants under the ADA and Rehab Act because he couldn't sue officials in their official capacity, and even if he could, that they were protected by state sovereign immunity. So we would be asking for a reversal and a remand to the district court with instructions that he can sue officials in their official capacity under the ADA and Eighth Amendment, ADA for damages, and that they're not protected by state sovereign immunity. Are you folks going to stay in the case in the district court? We're still trying to figure that out. We're not barred in New Jersey, so it would be dependent on finding local counsel. So Mr. Durham pled his claims when he pled that not only did he need a cane in a shower chair and request it from defendants, but he explicitly told them, I will suffer severe injury if I do not get a cane in a shower chair, and then he did, in fact, suffer severe injury.  And then I'd like to address some of the arguments that my friend on the other side raises in their answering brief. The district court in one sentence dismissed Mr. Durham's claims for his ADA and Rehab Act claims by holding that he was not a qualified individual with a disability and that he was not discriminated against by reason of his disability. But Mr. Durham is a qualified individual with a disability because he has lumbar stenosis, requires a cane to walk and a shower chair to shower. Had he medically been evaluated and told that you had a certain specific disability? Yes, Your Honor. He had been medically evaluated back in 2018, and that's in one of the attachments that Mr. Durham attached to his complaint, been diagnosed with lumbar stenosis, which involves this narrowing of the spinal column and is degenerative. And then he had been prescribed a cane a series of times, and then his prescription just ran out right before he filed this complaint. So the officials in the institution were aware that he had a specific medical disability? Yes, Your Honor. It was part of his record, was it? Yes, Your Honor. It was part of his medical record. And just visually, which is sort of important for the ADA claims, they could see that he ambulated with a cane because he had been walking with a cane previously. So he told them that he was going to be injured, and then he was, in fact, injured. The district court said that that wasn't discrimination by reason of disability, but there are two ways to plead discrimination by reason of disability under the ADA. One is intentional discrimination, intentionally discriminate against someone because they are disabled, and another way is just pleading a reasonable accommodation claim. Now, here Mr. Durham did both. He said that he was denied a reasonable accommodation of a cane in a shower chair, and also that the reasons that he was denied were, and he lists them, and this is at pages 34 to 36 of our opening brief,  or an apologize for my language because he's an asshole. And so those are obviously not valid reasons, and that is discrimination by reason of his disability. Did those facts support your deliberate indifference claim as well? Yes, Your Honor, both deliberate indifference under the ADA, which is necessary for damages, and deliberate indifference for the Eighth Amendment, because that's a non-medical reason for denying him these medically necessary things. While in the jail, did he suffer any serious harm or medical condition that was not attended to? Yes, Your Honor. And that he brought to the attention of the jail officials? Yes, Your Honor. For the cane, he informed the officials that he would be in severe pain if he had to ambulate without a cane, and then he did have to ambulate without a cane and was in severe pain. For the shower chair, he informed them that he wouldn't be able to safely shower without a shower chair, and then he, in fact, fell in the shower and injured himself, which are both parts of his pleading in his complaint and very solicitly laid out. The district court then, turning from the merits of his ADA and his Rehabilitation Act claim, said that even if those succeeded, he wouldn't be able to claim damages because he couldn't appropriately plead damages claims under the ADA and Rehabilitation Act against officials in their official capacity. That's simply not correct under the Supreme Court's holding in Will and under this court's holding in Chisholm. But then the district court went on to say that even if he could plead against officials in their official capacity, that they would nonetheless be protected by state sovereign immunity. And that's wrong, but for different reasons under the ADA and the Rehab Act. Under the ADA, that's incorrect because Title II of the ADA abrogates state sovereign immunity in this context. In United States v. Georgia, the Supreme Court laid out a three-part test to determine whether Title II of the ADA abrogates state sovereign immunity. First, a plaintiff... The district court didn't go down that road at all, did he? This court... The district court, in its opinion, really didn't analyze that. The district court did not do the Georgia analysis at all. It has one line about state sovereign immunity protecting. So I think what this court could do is remand with instructions to go through the three-part Georgia test in the first instance. I think if you do that, it would behoove this court to give instructions on if the court reaches the third part of the Georgia test, which is, is state sovereign immunity abrogated by Title II in the prison context? It would behoove this court to give instructions that, yes, it is, in the same way that you gave in Bowers, where you analyzed it in the education context. And the reason I say that is because the district courts are in a little bit of chaos about how to evaluate these claims. So do you think it makes sense for the district court to do that in the first instance, or can we do it based on the record we have? I think that this court could give instructions to guide the district court by saying in this context, based on this record, that in this context it would abrogate state sovereign immunity and then allow the district court to still go through the three-part test. And maybe there are particularities of the facts or of the allegations that mean that it wouldn't succeed at Step 2 or it would succeed at Step 2 and not at Step 3 or some sort of other reason. But I think this court can give guidance at least on Step 3. Step 2 is whether there's been a companion constitutional violation pled. And so I think Mr. Durham could also succeed there because he pled an Eighth Amendment claim along with his ADA claims, both arising out of the same behavior. And so that also can abrogate state sovereign immunity for the particular claim. But in Bowers, this court analyzed whether the ADA abrogated state sovereign immunity in the education context, and you looked at whether damages, remedies there were congruent and proportional to the constitutional harms that were trying to be protected. And you said, yes, even though constitutional harms in education are not at their highest point because they face rational basis scrutiny, that still a damages remedy was appropriate. And there's no real substantive difference in the prison context for that evaluation other than that there are higher constitutional rights at issue because there are Eighth Amendment claims and due process claims that aren't really attendant to the education context. Could you be a little bit more specific about sovereign immunity? What position are the jail officials taking that specifically suggests they are entitled to sovereign immunity? Well, Your Honor, my friend on the other side has taken no position. This was raised by the district court and by our brief, and they have not made an argument on sovereign immunity despite it being raised. So I think that they've waived. Of course, you all can affirm on any ground. But you say now that they waived the right to bring that issue. They didn't brief it. They didn't brief it at the very least. I do think that my understanding of the position of the district court and what we've seen generally just as a background doctrinal matter is that there's a question of whether Title II of the ADA abrogates state sovereign immunity in a context-by-context sense. So the Supreme Court in Tennessee v. Lane determined that it abrogated state sovereign immunity in the access-to-courts context. That was where two people were trying to access a court. They were in wheelchairs. There was no ramp, and they had to crawl up the stairs. This court in Bowers analyzed it in the education context, and you haven't had the opportunity yet to analyze it in the prison context, but I think the logic from Bowers would flow in the same direction. Is it part of your argument that sovereign immunity doesn't apply in this case? It's part of our argument that for Title II of the ADA, it is abrogated, and then for the Rehabilitation Act, it is waived because there are explicit provisions in the Rehab Act that say that a facility that accepted federal funding waives sovereign immunity under the Rehab Act, and we think that Mr. Durham, on the face of his complaint, has at least alleged enough that he can get past that sovereign immunity. It's possible that once this case actually, once the claim is served and once the case goes through discovery, that other facts can come out that might undermine that claim, but we're just not at that stage yet because this is a pre-service screening order. I would just like to briefly address my friend on the other side's in my remaining time, which is just that Mr. Durham pled for injunctive relief. He pled that he was denied a claim and he made a claim for injunctive relief, and this court is bound to read pro se complaints liberally, and I think there's no other way to read his complaint other than requesting a cane and a shower chair going forward. Thank you, Your Honor. Thank you. Good morning, Ms. Cohen. Good morning, Your Honors. Stephanie Cohen, Assistant Attorney General for the New Jersey Attorney General's Office, on behalf of the appellees. May it please the Court. Judge Schiff's decision to dismiss the complaint without prejudice was proper for three specific reasons. One, appellant failed to plead sufficient facts to plead deliberate indifference. He sought prospective injunctive relief. On deliberate indifference, your brief says that the standard for deliberate indifference under the ADA and the Rehab Act and the Eighth Amendment are the same. Yes, Your Honor. Do you still stand by that? Yes, Your Honor. This court in Haberle v. Troxell, which is 885 F. 3rd 170, made that clear. Under the Eighth Amendment, the plaintiff must show that the prison officials knew of an, quote, excessive risk to inmate health and safety, and that's from Farmer B. Brennan from the Supreme Court. Correct, Your Honor. But under the ADA standard, the plaintiff must show that the prison officials knew a federally protected right is substantially likely to be violated. That's under Fergus from 2019. So those are different. Not exactly, Your Honor. I mean, to the extent they are different, it's slight without a distinction here. The Haberle court specifically said, and also Matthews v. Pennsylvania Department of Corrections, which applied it, it's an unreported decision, but it does apply it in the prison context, talked about how you can establish, right, that there is a likely violation of a federally protected right and failure to act on that likelihood. And the Haberle court went on to note that it can be done in a couple of ways. One, by either suggesting that there's been a pattern and practice of past occurrence of injuries of which people would be aware, or, and this goes more in line with the Eighth Amendment for 1983 with respect to deliberate indifference under that standard, proving that the risk of cognizable harm was so great and so obvious. So you're saying that an excessive risk to inmate health is the same as a federally protected right? Well, in this case, how you establish proving a federally protected right, the damage is substantially likely to be violated, but that's under violation. But I read the Eighth Amendment as being more difficult to overcome as a hurdle. All right. Well, I think on this particular, on either way, Your Honor, with respect to how you would establish deliberate indifference, we would say he's failed to plead it under either standard, even to the extent you find a difference here. And the reasons being. Let me ask you about that. I understand it's a pro se litigant. Yes. And I read from the complaint, right, his complaint. He said he was diagnosed with having lumbar stenosis, and he attaches a medical record, and it reads from a doctor, it is my impression that this inmate has lumbar stenosis. Then he goes on to plead. He told the nurse that he was having excruciating back pain and he needed to see a doctor. And the nurse told him he doesn't need a cane in quarantine. He should wait until he gets out of the population. He then pleads that he was told that he was complaining too much, and they referred to him as an asshole and he gets nothing. That's not deliberate indifference. I'm sorry, Your Honor. That's not deliberate indifference. Well, if that's not deliberate indifference, what is? So, Your Honor, with respect to this case, I mean, he's pleading against a whole bunch, right, a whole paraplegia of corrections officers and nurses. And this court has noted that it's not just that there's a risk, right, that there has to be a subjective understanding that there could be excessive risk and then deliberate indifference with respect to that. Don't the comments that relate to Chobanovich and Goodwin indicate that there certainly was some indifference to his condition with his cane, even if he had come out? It sounds like they were going to deny him his cane in any event. Are we talking about like the initial with the A-hole comment at the beginning, Your Honor? So, I mean, it certainly isn't, you know, I would argue it certainly isn't appropriate for what they said. But does it show, even if it meets the initial thing, like they realized he should have had a cane, how does it get to understanding that there could be an excessive risk? The objective has to be the subjective understanding that there's a risk to his health or safety. And the mere fact that he has a cane doesn't necessarily, as we noted in our briefs, for example, the shorter case which we rely on, but also Fergus. And what do you rely on in the shorter case? So what we're relying on in those cases is that in those specific cases, there was a lot of pleading with respect to what the prison officers particularly knew and appreciated, right? So, for example, in shorter with a transgender case, there was a lot of evidence that the prison officials that were being sued understood, appreciated the risk, realized the transgender inmate needed to be moved, yet despite that, didn't move her. And when they did move her, they moved her to a cell that was far away in which she could be raped. And you could appreciate the risk with respect to that. This person gave, what, 15 or so warnings to the prison officials. But how are those allegations any different from what happened in this case? The person kept saying, I want my cane. And he talked with everybody he conceivably could think of, and he wasn't getting his cane back, which was necessary for him in order to walk. Well, Your Honor. One more fact to that. There's a prescription, a written prescription for medical equipment used for ambulation. There was, although, as we know, it did expire right before Mr. Durham went into the. . . But he still had lumbar stenosis. Yes, Your Honor. But what he pleased with what he's saying to the various officers as to why, you know, he's just saying, I have back pain, for most of them, right, for getting the nurses. But for the corrections officers, a lot of it is, I have back pain, I have trouble walking. It's really more what did they know and appreciate. So, for example. . . What should a pro se litigant have pled? In this case, so, using the Shorter, Palachovic, and Fergus examples. . . And, again, it's a spectrum. It doesn't have to be as well pled as those, although I believe Shorter and Palachovic were pro se. He needs to plead evidence that shows that they understood and appreciated. So, they saw me, you know, having trouble walking. They saw me having difficulty ambulating, so they could make an assessment of that. Merely saying, I'm having back pain in and of itself. . . And the medical prescription, the doctor's prescription is not enough. The doctor's prescription is enough to get the serious medical need. But then the question becomes, did the officers or the officials in the prison appreciate that medical need, understand that he had that medical need. What's this called? Ambulation. And then they take his medical devices away, and he can't ambulate. Well, it's to assist, but it expired. But that aside, they have to also appreciate not just that there was difficulty walking, but, for example, that there would be harm that flowed from that. It seemed from the record that he had a medical condition, and he complained of that condition constantly. And he asked for accommodations, and those accommodations were completely denied. And as a direct result, he suffered an injury. Isn't that enough at this stage of the case? No, Your Honors, because, for example, in Palakovic and in. . . Well, Fergus is actually the better example here. So, Fergus is the denial of the accessible shower, right? So in that case, the inmate had a prescription for the shower chair, right? That was the issue. Did you say prescription? Had a prescription. Well, he was allowed the shower chair. They knew that he was allowed the shower chair. They moved him to a special housing unit, right, for disciplinary reasons, which didn't have an accessible shower. He noted that he needed a shower chair. Everybody knew he needed a shower chair, but they couldn't give it to him. For three months, they didn't give it to him. And then when they finally gave it back to him, they put him in a place where there wasn't an accessible shower, and he fell as a result of that. Here, Mr. Durham is not pleading, but he had the right to a shower chair. He's requesting it, but he didn't say he was accommodated for that, and that's what seems to have caused the injury here, not so much the pain. But this whole case is about a reasonable accommodation, isn't it? In effect under the ADA, and I guess the Rehabilitation Act as well. Primarily. I mean, you obviously have the 1983 claim for deliberate indifference under the Eighth Amendment, but isn't the primary thing that he wants his cane prescribed for him is a reasonable accommodation to deal with his lumbar stenosis? Yes. But that doesn't lead to damages for, we're talking about under the ADA. Either way. For the accommodation. You still have to prove deliberate indifference in order to get personal damages with respect to that. You have to prove it? I'm not pleading. We're in a pleading stage here. You have to plead it, but we would argue, Your Honors, that he's not sufficiently pleading it, there was a lot more there plead about how the officers were aware or the prison officials were aware of what the person needed and then specifically denied that. Here we just have a person who doesn't have a cane saying he's got a back injury, but there's no indication that several of the officers even knew he had a prescription for lumbar stenosis, that he was telling them that. And for the few that he did, there's not evidence that they specifically, well, the nurses, they saw him and they treated him. And for the others, they have to have subjective understanding that it could lead to, you know, a serious risk of injury. And I would say on the record here, you don't have that. There is a liberal construction and then there is a dearth of facts, and I would say that with respect to this, there is a dearth of facts. But stepping back, Your Honors, with respect to what is in this case as... Let me ask about sovereign immunity. So you didn't respond to counsel's argument in your brief, did you? No, we didn't, Your Honor. We're not raising... You're not contesting that? We're not. We're not. At this stage, we're not raising sovereign immunity, right? Sovereign immunity is the state's right to raise, and we can raise it at any point. But how would you raise sovereign immunity as to the ADA claim when this is a Title II claim for intentional discrimination? The cases that I thought you cited were Title I and Title III. They don't relate to this. So with respect to that, Your Honor, it's well settled in the circuit. So it's well settled, right, that there's no liability for individual damages under the ADA or the RA, right? But he sued under Title II, so sovereign immunity wouldn't apply, right? It's abrogated by Congress. Title II, sovereign immunity, that's part of the issue, and we're not raising it. So Your Honors don't have to get to that question here. In fact, so Coslow said... Congress did not validly abrogate sovereign immunity for claims under Title II? Under Title II, Your Honor, that's the whole question in the prison context, and we're not raising sovereign immunity at this time, so the Court doesn't need to address it. By being a prisoner, that means he's a qualified individual because he is in a system for which services are rendered in a public context, correct? Correct, Your Honors, but in this particular case, they're only suing individuals in their individual and official capacities, and they're not suing. They have a pleading error. They haven't sued the state where it would apply, right? So the question is with respect to the individual claims. They don't have individual remedies under the ADA. By suing them in their official capacity, aren't they de facto suing the institution? No, Your Honor, that doesn't raise to that level. So Congress can choose who they want to sue. They chose public entities in this particular case, not the individuals. With respect to the claim that it's the individuals, that suing them in their official capacity is really suing the state, doesn't square with COSLA, which talks about how you have official capacity. The official capacity claims are designed to allow you, under Ex parte Young, to get to the state for ongoing harm. It's not about suing the individuals for monetary damages. It would be allowing you kind of an end-runaround of suing the individuals in their official capacities as a way to get to the state. I'm not aware of any case since COSLA that talks about you have the right to sue for monetary damages, individual damages. But the ADA and the REHAB Act claims are against the officers in their official capacities. Isn't that correct? Correct, Your Honor. And in their official capacities, that's what COSLA says. You can only get prospective injunctive relief in that situation. What they're trying to do is an end-runaround and say, no, no, no. We've sued them in their official capacity. That allows us to get to the state for purposes of filing, instead of they didn't plead it against the state. And that's not what COSLA allows. I'm not aware of any reported decisions post-COSLA saying that it's proper to sue in official capacity for monetary damages. So it's not official capacity doesn't work for monetary damages. It's a question of whether it's sued for the state. Just to clarify, so your view is that sovereign immunity doesn't apply in this case? We're not contesting it in this case because they're suing in their individual and official capacities, and we're not contesting the applicability of Ex parte Young at the current moment. So sovereign immunity doesn't play a role here? Not at the moment, but your honors don't have to reach that because for the reasons that we've talked about on the other grounds. Sorry. I thought you raised standing and mootness arguments on appeal when the district court didn't consider those. Shouldn't that wait until you're served and then file a motion? For the standing and the mootness? Correct. So with respect to the standing and the mootness, your honors can decide it now. Even though the judge didn't, you have the authority right on any grounds below to decide the case. And if you look at it, the standing argument is that they have to have current ongoing harm or it has to be imminent. And what the plaintiffs want you to do is to accept that he doesn't have a cane and there's nothing in the pleading that says he doesn't have a cane. And they say, well, you've got the relief clause, paragraph F, that says that they're asking you to prevent future, I'm trying to think, like ongoing harm with respect to that. But that's a legal term. He does allege, I think it's on appendix page 44, that the corrections officers were, quote, not to give plaintiff his cane in the future. If that's the case, then you have, in effect, a voluntary cessation currently of something that could recur down the road. So, your honor, with respect, and that's actually a really good point, and I was going to bring that up, if you look at that paragraph, that is from paragraph 55 of their complaint, or 56, hang on. It specifically identifies that this happened in 12-11-2020, which was more than seven months after he had already left the quarantine unit, which is what he's complaining about. I'm sorry, paragraph 56, 844, paragraph 56? Okay. Your honor, on or about December 11th, 2020, Officer Jachovinick and Goodwin were overheard conspiring not to give plaintiff his cane in the future. That would seem to indicate, you don't have to, you know, accept my word for it, just seeing what he's pleading, that he, in fact, has his cane currently. And then the question is, well, they're conspiring not to give him his cane in the future with respect to that. The argument is, is it imminent? And the appellant cites some cases that talk about that mootness isn't, you know, necessarily rejected if there is sort of potential for ongoing harm, but those are in much larger context with, like, policies that affect the prisons prison-wide, and maybe when you're transferring from one prison to another, like there was a halal food preparation run or some other cases, and that's not what we have here. So for the prospective injunctive relief claims, they would like to move. One last question for my part. If sovereign immunity is validly abrogated, can't Durham seek relief in the form of monetary damages? So, no, that gets back, your honor, to, I should say, for, well, for official capacity rights. So he can't seek it in the individual capacity because Sovereign immunity doesn't apply. Doesn't apply, right. If it doesn't apply, why can't he seek monetary damages? Because he has to seek it either way. So if sovereign immunity doesn't apply, then the question is, who is the proper defendant? And the Congress has identified the proper defendants as being in the ADA, in the RA context, ADA Title II in the RA context, as being public entities, and they define public entities as state governments, local governments, and some other ambulations there, and they never say anybody in their official capacity. So to the extent it didn't apply, and this is, I think, the Kentucky versus Fram, the United States Supreme Court, in connection, I think, like Note 14, it was dealing with the abrogation of sovereign immunity, and they're talking about in the Monell context. And in footnote 14 of that case, they specify that you don't need official capacity claims anymore, right. If for Monell liability, if you can have direct liability against the municipalities going forward for injunctive relief and direct claims, that the official capacity claims are really a legal fiction, under Ex parte Young, designed to prevent ongoing harm to, you know, federal implications of ongoing harm. That is, that's what they've pled here. They're pleading official capacity claims as a way to get to saying we've pled the state when they needed to plead the state or a public entity, and they didn't do that, and I'm not aware of any cases post-COSLO. If Duran, COSLO is like Title II, right? No, but it would apply, because it's talking about perspective. They cite cases that also dealt with Title II in the COSLO opinion, and saying that there was, they say to other circuits, but saying that it dealt with it in the Title II opinion and context, Your Honor. If Duran prevails in this case, what relief does he have? Just fix the problem? But he's not entitled to any monetary relief. What would he be entitled to? So if Duran prevailed in, I'm sorry, Your Honor, in what context in this case? Well, if he prevails, he's got. Let's say he prevails under the ADA and the Rehab Act, what would he get? Well, to prevail, he would have to establish that he would do the right. Yeah, I got it. So with respect, so our argument. What would the relief be? He wouldn't, in our position, Your Honor, he wouldn't be entitled to any relief, right? He hasn't pled perspective, injunctive relief. He doesn't have standing in the witness. He's denied a chair. He's denied all the relief that, let's say he establishes that. He has denied all these various things that he claims he should have because of his physical problems. What relief does he get, if any? They fix the problem? Why would he not be entitled to monetary relief? Because in order to get monetary relief, well, so he has two problems. One, in order to get monetary relief, you have to prove deliberate indifference, which we would say he's not. If he has proved deliberate indifference, he still has to sue the correct parties. And he didn't sue the right party here with respect to that. Who's the correct party in your view? I'm sorry? Who's the correct party in your view? Just the institution? Institution? State? Is that what happened in Fergus that was just the institution that was sued? In Fergus? Remember, Your Honor, I have to pull that up. Well, you can take a look at it if you want to just comment afterwards. But if you get relief for the 1983 claim, or if you have a valid claim, what is the relief there? If you get relief for a 1983? If you have a valid 1983 claim. Then he would be entitled to monetary damages against the individual defendants in their individual capacity, or prospective, potentially adjunctive relief if it applied for the official capacity.  Thank you. Thank you, Your Honor. Hello again, Your Honors. A few quick points to just clear up some confusion. First, Judge Ambrose, to your questions about deliberate indifference. My friend on the other side cited Haverly v. Troxell for standing for the proposition that the standards of deliberate indifference under the ADA and the Eighth Amendment are the same. But let me just quote from Haverly v. Troxell, and this is at page 21 of our brief, that to plead deliberate indifference under the ADA, you need to plead knowledge that a federally protected right is substantially likely to be violated and a failure to act despite that knowledge. That is different from the deliberate indifference standard under the Eighth Amendment. Here, the federally protected rights are his rights under the ADA to be free from disability discrimination. And that was violated when he told them that he needed a cane. He told them that he needed a shower chair. He was diagnosed with lumbar stenosis many years prior. They knew that he pled all of these things, and then they still denied him those accommodations. That's more than enough under deliberate indifference standard under the ADA and under the Eighth Amendment. If I could turn then to the points that my friend on the other side made. Are they different to you? One under the Eighth Amendment is excessive risk. Yes. And the ADA and our RA do not specifically talk about an excessive risk, at least under the cases that are interpreted. Is that correct? The ADA cases talk about a substantial likelihood that a right would be violated rather than an excessive risk. It's less of a discussion of particularized harms that are going to happen and more whether the right is going to be violated and whether they have that knowledge. And to the extent that there's any doubt about whether they have that knowledge, I would say that this is a pre-service screening order. Knowledge, like reasonableness, is often a fact-bound question, and so I think that's something that would benefit from remand and discovery, but that he's definitely pled enough here for deliberate indifference both under the ADA and the Eighth Amendment. If I could turn to some of the questions that you're asking about sovereign immunity and official capacity defendants, I'll admit some confusion as to why my friend thinks that you can't plead ADA damages claims against officials in their official capacity under Title II. That's one method of pleading against the state. This court said so in Chisholm when a defendant pleaded against the warden in his official capacity, and that counted for pleading against the state or the facility is the appropriate defendant. Individuals in their individual capacity are not. We agree with that. But there's no real distinction both under the case law and just as a doctrinal matter, there's no real distinction between pleading against an official in their official capacity and the state or institution. The same party at the end of the day is liable. Judge Fuentes, to your questions as to whether sovereign immunity is implicated by this case, I think it is because that's one reason that the district court ruled, and the district court would have to go through that analysis. When you say implicated, do you mean it applies? It applies. Well, it doesn't apply. We think it's abrogated by Title II and waived by the Rehab Act, but we do think that it's appropriate for this court to analyze it, one, because the district court ruled on that basis in part, and two, because it's a jurisdictional question. Of course, my friend on the other side could choose not to raise it as a defense, but here the court sua sponte did, and it's something that the court could address because it is a jurisdictional matter and it's well presented before this court. What's your position on that view? As to whether sovereign immunity applies, we think that it's abrogated under Title II. For the Title II claims, state sovereign immunity is abrogated because Mr. Durham either meets Step 2 of the United States versus Georgia test because he's pled a companion constitutional violation, or if you find that he hasn't pled a companion constitutional violation, that he's met Step 3 because Title II abrogates state sovereign immunity in the prison context writ large for the same reasons it did in the education context in Bowers. For the Rehab Act, the Rehab Act waives sovereign immunity for facilities that accept federal funding, and they do so here. If I could just see my time is running out, I just want to make one final point on the deliberate indifference questions that Judge Ambrose, you were asking about Shorter. We were Shorter's counsel, and my memory of that case is that Shorter, like Durham, requested a series of moves to a safer area, and this court held that they had background knowledge because of her transgender status that she was at risk. Here, Mr. Durham pled the same things, although in a different context. They had background knowledge of his illness because of the diagnosis by their own doctors, and he requested repeatedly for a cane and a shower chair to anyone that he could reach. I just don't know how that doesn't plead deliberate indifference. Unless there are any further questions, I would just ask that this court reverse and remand. Thank you, and thank you for your pro bono efforts in this case. Thank you, Judge Shorter. Thank you. Thank all counsel in this case, and we will take this case under advisement.